And we will now hear argument in the final case of the day, Jensen v. Thornell, a very, very, very long-running case. We've got one in California substantially the same. You're probably familiar with that one, too, right? All we need is states with infinite amounts of money available to take care of the problem, right? Okay, so one, I'm sorry, who's arguing? Is Ms. Kendrick? I'm sorry, I'm mixing it up here, but I apologize. Good morning, Your Honor. Andrew Pappas. I'll be up at the defense in just a moment while you're up. I imagine that if any of you have any difficulty sleeping, all you need to do is to read this record. Kept me up. It is voluminous, Your Honor. Good morning. Andrew Pappas on behalf of the defendants and appellants. I'd like to reserve five minutes for rebuttal. Very well. You don't even have to use all your time if you don't want to. Okay. Your Honor, the district court granted prospective relief without making the need, narrowness, intrusiveness findings that the Prison Litigation Reform Act requires. Can I just, I want to make sure I understand what you're arguing. And you're attacking the final order here? That's correct, Your Honor. But I think your brief makes clear some portions of that order you're not attacking, because they just mirror the injunction in which the findings were made? Your Honor, what we're challenging on appeal is the district court's failure to make the required PLRA findings. So we're not challenging. Well, but see, that's the question. Okay. So let me focus on that. Sure. If the district court made the PLRA finding in the injunction to which you stipulated, but didn't and the final order just orders exactly the same thing as the injunction, are you claiming the order was deficient in that respect? Well, Your Honor. Yes or no? It does not simply order what is in the injunction. It is not a simple enforcement order. I understand it's an enforcement order. No, it's not. The injunction says you must keep the temperature in a cell at 71 degrees. And the final order says you must keep the temperature in the cell at 71 degrees. One is an injunction. The other is an enforcement order. The judge made in the injunction the appropriate PLRA findings. Are you saying that as to something which exactly mirrors the injunction? And I have a little chart here, and I think you'll agree some of the things in the final order mirror the injunction. They're exactly the same thing the injunction required. So, Your Honor, let me step back. Are there? Well, so when we're referring to the final order, I'm referring to the order in which the district court approved the final staffing plan. That's right. That's what I'm referring to, too. We're talking about the final staffing plan. And what Judge Hermos is saying, the final staffing plan differs from the order and injunction in some ways, but not others. Your Honor, we are not in this appeal challenging the particular provisions of the final staffing plan. What we're challenging is the district court's failure to make the required PLRA findings in its order approving the staffing plan. And I'll say, Your Honor — Okay. Okay. No, but I'm still — I'm still there stuck. Parts — she approves the staffing plan in the final order, correct? That is correct, Your Honor. Okay. Parts of that staffing plan were exactly what she had ordered in the initial injunction to which you stipulated, correct? There are aspects of the staffing plan — Okay. There are aspects. Parts and aspects are the same thing. And there are vast aspects of the final staffing plan — Okay. Let's talk about the gaps later. I'm just talking about the ones that are exactly the same thing that she ordered in the injunction. Why does she have to make the same findings she made at the time of the injunction all over again here? Don't we read the record as a whole? No. No, Your Honor, you do not. You read the decision as a whole. And what the decision says is it reflects that Section 1.17 of the injunction, which is what the district court approved the staffing plan under, contemplates a process by which it is — Okay. I'm not talking about the staffing plan now, because that's where we're missing each other. I'm talking about the final plan has more than — well, the final plan has a number of provisions in it. Some of the provisions are exactly the same as what the judge ordered in the injunction, are they not? Some of them are — Okay. As to those — Again, Your Honor — As to those, your position is she has to make the finding all over again? My position is the PLRA requires courts to make need-nearness-intrusiveness findings whenever they order prospective — Okay. So your position is that she does have — The staffing order actually deals only with staffing, right? Well, it deals with staffing, is hiring, supervision. Right, right. But it doesn't deal with a lot of the other things that are in the injunction, originally, 2023 injunction. That is correct. So we're only talking about the staffing plan. All right. Now, let me — I have a question, which is, your problem is only that she didn't say these words. Suppose we were to have a limited remand and tell her, you know, say the words. Would that be okay? Would that be satisfying? It would not, Your Honor. No. Our position is that the findings need to be meaningful. And this is consistent with what the court has said. You're right. You're now challenging just the failure to make the findings. We have two questions presented. One is the failure to make the findings. And then our second is that on remand, this court should direct the district court to make specific findings. Let's assume that we don't want to boss around the district judge. Your only deficiency that you're alleging on appeal is that she didn't make the findings, right? And it is a — Because you can't be complaining that she wasn't specific enough in making them since she didn't make them. That's — well, that's — Okay. So why don't we — and I want to inject a little common sense into this, which both sides may reject. We all know beyond a shadow of a doubt that Judge Silver meant to comply with the PLRA because she did so so many times before. And we all know beyond a shadow of a doubt — I'll take your bet at whatever odds you want — that if we send this back to Judge Silver, she'll simply make the findings. Indeed, if we were in a different world, we'd just call her up — she's in the building — and say, did you meet in the final order the final staffing plan to comply with the PLRA? And we'd say yes. And we'd say, well, you didn't say so. Would you say so? And she'd say yes. So Judge Berzon's question is, why don't we just suspend this appeal, let you go back to the district judge and say, judge, you forgot to make the findings? And she will. And then we'll be back here. And you can argue about the sufficiency of the findings. But — now, that — we've been at this for 20 years. Because once we get to the sufficiency of the findings, I think we approach them with a whole history of the litigation in mind, knowing how badly your client has acted over 20 years of this litigation. But if your point is that she didn't make the findings, let's have her make them. Your Honor, we asked — You won't take that as a victory? Your Honor, we asked — You want us to tell her to make the findings, but you also want us to tell her how to make the findings? Your Honor, we asked the district court to make the findings. The plaintiffs asked the district court to make the findings. The district court did not make the findings. And the PLA doesn't require us and doesn't expect us to guess. No, I understand. It doesn't. You've got a complaint. Let's assume we think you're right. Let's ask her to fix it. Your Honor, I think that the reason why this court ought to direct the district court to make meaningful findings, which is what the PLA requires under this court's own case law, is because in making those findings, the district court may discover that, in fact, the relief this orders is not narrowly drawn. In fact, it extends further than necessary. The findings that she made, the order that she made, was evolved through a complicated and lengthy process with the help of experts, with input from the parties, with hearings, with explanations as to why she included each provision. And that seems to be the explanation that you're asking for. The explanations were in the order of, I've tried to do this less specifically. I've told the parties to do this. They haven't done what I've told them to do. I have no choice but to be much more specific than one would ordinarily be. I don't really know how to do this, so I'm going to have experts do it. We're going to have pilot projects. We're then going to incorporate what the pilot projects show into the final staffing order. It seems that there was explanations galore. What's missing is a sentence. Respectfully, Your Honor, I disagree. There is no explanation whatsoever in the final staffing order, and there is no indication. Because she didn't make the findings. That's because you're asking us to anticipate in advance that when she makes the findings, which she surely will when we send it back, nobody doubts that, that she will do so in an insufficient manner. We're dealing with a district judge here who has served for 30-something years, who's so far complied with the statute twice, absent any complaint by, you never complained about the injunction. And so you're asking us, just because the department thinks you're stupid, we're instructing you in advance how to make the findings. I must tell you, I'm not inclined to do that. Maybe my colleagues are, but I'm not. Your Honor, no, not at all. We're not anticipating the district court do anything except comply with the PLRA. So am I. So if we tell her, we're sending this back for you to comply with the PLRA, let's see if she does. We should anticipate in advance, you're saying, that she won't, and instruct her how to do it correctly? I think all we're asking for is that the court instruct the district court to make the findings. Let me ask you a separate question while we're on this topic.  When the final plan came out, the judge said to both sides, here's the final plan, do you have any objections to it? And you had a number of objections. This provision doesn't comply with the PLRA because it's not narrow enough. And I'm using you, by the way, to mean the ADC, not these counsel personally. I understand that you're coming at a later stage. And you have a number of them. You say, as to these, I don't think this one complies with the PLRA. You don't say that about the provision that requires the addition of physicians and mental health assistance. No objection whatsoever to that provision. Shouldn't the judge have understood from that that you weren't contending that that provision didn't comply with the PLRA? Your Honor, we, as Your Honor points out, made objections to many aspects. Right, but not to that aspect. Not to that aspect of the final plan. Actually, not that many. Three or four. Your Honor, obviously we had a limited opportunity, page-limited opportunity in which to make objections. But again, I am not. Well, you actually appended an exhibit that said, you've got a page limit, so here's some more objections we want you to. So, I looked through all those carefully, and you can correct me if I'm wrong. I don't find a single objection raised to the number, to the part that says, add this many physicians and add this many assistants. Am I wrong? Your Honor, I'm not sure. Forgive me. I'm not sure precisely which provision of the final staffing plan you're referring to. Okay, I'll read it out loud to you, so there'll be no, so there'll be no. There's a provision of the final plan. It differs a little bit from the initial plan, but it says that you must staff up to a certain level of physicians and mental health assistants. You familiar with that provision? Your Honor, forgive me. I'm not familiar with the specific provision you're referring to in the 78-page final staffing order, but. It requires, no, it's at 2ER138. And it says, it requires staffing of 1,017 primary care physicians and 482 mental health physicians. Are you familiar with that provision? I'm sorry. I'm looking at it as we speak. The initial, 1,014 and. That's in the initial plan. It changes in the final plan to 1,017 and 482. Your Honor, whether there's a specific objection to that particular number, I do not know. Okay, I'll investigate. Was there a specific objection to that number? The objections are that the plan as a whole is not narrowly drawn and extends further than necessary to correct the violations. I know that's your objection. I'm, but. So, and again. But you did raise very specific objections to other parts of the final plan, did you not? You said this one, the one that, for example, requires shifting of patients at levels 3B and 3A to the next highest level. You said that's not, that's not narrow, sufficiently narrowly drawn. Or the one that requires one physician and one, and a psychiatrist, and an APP is to be on call after hour. We objected to many ways in which the final. You objected to many specific. Now, let me finish. I mean, I know what your spiel is, but I want to get your answer to a specific question. You objected to many specific provisions of the final plan by saying they are not sufficiently narrowly drawn, correct? We objected to specific provisions, as well as the plan as a whole, that it does not meet the PLRA standard. And we pointed out numerous ways in which specific provisions drive up the staffing numbers in the overall plan. And it was the district court's responsibility to find the final staff. Okay, so now here's my next question. Narrowly drawn. Why wasn't her rejection of your objections effectively an adoption of the notion that it was PLRA compliant? Your Honor, there is no case that I'm aware of that holds that a district court's refusal to make the PLRA. Well, there's no case I'm aware of that's gone on for 30 years where the judges twice before made the appropriate PLRA findings. Your Honor, there's no exception in the statute for long-lived cases. The, the, this court in Alua, for instance, reversed where the district court did not make PLRA findings. There is no requirement that this court guess at or assume what the district court had in its mind. The PLRA required specific findings to be made. They were not made. It's that simple. But what, what kind of specific requirements are you asking for? Are you asking for a, a provision-by-provision finding? Or are you asking for an overall finding? Your Honor, we're asking for a finding that is clear enough to explain what was in the district court's rationale in concluding that this relief extends no further than necessary to correct the Constitutional Act. We're not asking for it. But that's not, that's not what Judge Berzon asked. Judge Berzon asked, are you asking for a provision-by-provision finding? Or are you just asking for a finding that, as a whole, the plan goes no further than is necessary? We're asking for something in between. Because we understand the court's case law says that provision-by-provision is not required. But it also says that the overarching inquiry is whether the vindication of the right could have been achieved by narrower means. What we're looking for is- If she, if we suspend the case, have a limited remand, she says the same sentence that she said several times before, which just repeats what's in the statute. Are you going to come back here and say that's insufficient? We might, Your Honor. I don't know. And how would we review that argument if you did? What would be our standard of review? I think that, well, the court reviews the application of the PLRA de novo. It reviews findings made for clear error and reviews the scope of an injunction. Okay, so if she made that finding- Well, again, our hope is that the district court will make meaningful findings, Your Honor. I understand you want to say stuff, but I do, too, and I'm up here. So she makes the finding, same one she's made twice before, adds to the finding. We send it back and say you forgot. Make a finding. Make the appropriate finding. And she says, I find that this final staffing plan meets the requirements of the PLRA. It's narrowly drawn out. She uses the language of the statute. And then you come back here and you say to us, we want to contest that. We would review that with great deference to the district judge, would we not? The court would review findings of fact for clear error. But, again, what we hope is that on remand, if the district court goes through this exercise, which is not simply a box-checking exercise, Your Honor- Well, what if the district court said, look, you've got to view this all as a whole. These guys have been contemptuous for 20 years. They have violated the rights of the plaintiffs in this case repeatedly. They failed to follow the settlement. So when I put this one, and I've asked a bunch of experts to design a plan that's as narrowly focused as possible, which she did. That was the instruction to the experts. And I find that they succeeded. You're saying she must go — are you saying she then must go down finding by finding and find that each one is the least required? Your Honor, I think that the more extensive relief a court orders, the more it should show why that is not- I ask you whether she has to go down by — down finding by finding. I think she needs — no, I mean, there are — I think there may be cases in which provision-by-provision explanation is warranted. Obviously, we would welcome that here. But at a minimum, I think what the district court must do is explain why the relief in this staffing plan, which adds more than 600 new employees to a tune of $100 million, why that? And why this — this very granular approach is the narrowest means of vindicating the rights issue. Well, she has explained many times why the granular approach is necessary. But she has not explained why the relief is necessary. She's explained that, and she's explained it, and she's explained it. Your Honor, let's — So I don't know. As to granularity, I don't know what more she's going to say, except that when I tried to do it in a non-granular fashion, you didn't do anything. Your Honor, I — and I'd like to try to reserve a little bit of time for rebuttal. Go ahead. You can reserve that time. Okay. Thank you. Very well. Let's hear from the State. Good morning, Your Honors. Corrine Kendrick for Plaintiffs Appellees. The PLRA does not require rote recitation of a verbal formula or citing a statute. It requires that relief, in fact, be limited to what is required to correct the constitutional violations. Well, doesn't it also require — that's a substantive requirement. Yes. But it also requires that the judge make that finding. In other words, there's two separate issues here. If she'd made the finding, we would then review her finding to see whether or not it met the substantive requirements of the statute, whether the plan did. But she didn't. You know, there's a final staffing plan here that she didn't make the finding. Whether it's rote or otherwise, she just simply didn't make it. Now, as I said before, I'm sure she wanted to, and I'm sure this was just an oversight, but she didn't make it. So why don't we just send it back to her to make it? Well, if you do that quickly, that would be great. So we can get the show on the road because people are continuing to suffer. I think — Well, but that's what I wanted to ask Mr. Pappas this, too, so maybe he can respond to it. If we did that, if we simply suspended the appeal and revested jurisdiction in the district court — And even said — and we want it back in a month. And said you must mandate it issued right away, and we said we would either make the findings. If you don't, then maybe your final staffing order is no good. If you make the findings, then we'll get to the substantive question of whether or not it complies with the Act. What bad happens in the meantime? The only bad I could see, Your Honor, would be delay. But you are — We've had — we've had — This is one case where the prospect of delay seems to be baked into it, doesn't it? Certainly. We're on our fourth district judge and a new plaintiff. So, yes, delay is definitely — One observation is that the way the scheme was set up, the final — it wasn't an automatic run from the injunction to the experts to the staffing plan, because she always said, if approved by me. So, therefore, it doesn't seem possible to say — to take her out of the picture in terms of what it was that the experts recommended. And, therefore, the order was her order, not simply the publication of the experts order. Is that right? Yes, ma'am. And I think that raises a good point, Your Honor, is that you can't read the page-and-a-half June 2025 order in a vacuum as defendants are inviting you to do. That's just not what this court does historically. If you look at the Armstrong cases, all four of them that we cite, if you look at Parsons, if you look at Edmo, if you look at Kelly, what the Ninth Circuit does is it looks at the picture as a whole. And so, here, if you look at that June 2025 order, she's citing back to the injunction. She's citing back to the June 2024 order, where she originally — My point was that she did, in fact, reserve a decision-making role for herself. And that would seem to suggest that it isn't simply a replication of the earlier orders or even an enforcement of the earlier orders. Well, the staffing plan was envisioned in the injunction to which the — What if the final order said you will add a million new doctors? Would you say it was good enough because the injunction envisioned that there would be a staffing plan? No, but, Your Honor, the point — Where did the number come — number doesn't come from the injunction. It comes from factual recommendations that are made to her and get tinkered with a little bit. And so, why shouldn't the PLRA — aside from a waiver or forfeiture issue — why shouldn't the PLRA apply to that kind of finding? But, as you pointed out, when the first version of the plan came out with the pilot project, which the pilot project is the living embodiment of the needs, narrowness, intrusiveness inquiry because she said, let's test this before I make a final order. But this is different than the pilot project. Just to take the one that Mr. Pappas and I went back and forth on, it involves 80 more non-physicians being added to staff than the pilot. And so, a finding that the pilot program, even if applied across all the facilities, was the least intrusive method doesn't mean that 80 more is the least intrusive method, does it? No, but the other thing that you pointed out when you were questioning Mr. Pappas is that there were countless rounds of commentary, objections, responses to objections. I used to put a waiver or forfeiture issue aside. Your argument seems to be it doesn't matter what the number is in the final plan because the injunction envisioned more staffing. And so this is just a minor bagatelle, a detail. And I'm saying if that's true, then your argument would justify enormous numbers of people. No, the whole point of the pilot was to determine whether the estimates were correct. And you also not only have to look at her order from 2024 when she approved the pilot, but the four and a half hour hearing that we held upstairs where she had the experts answer questions from Defendants Council about their methodology, how they arrived at the number. And she said the whole point of this pilot is to find out if these numbers are accurate. Well, but let me ask you a question about that order, about the initial plan, if you would. Sure. It does have the PLRA language in it, but I think as I read it, that language only applies to whether we should have a pilot program. That's correct. It doesn't apply to the numbers. Well, and that's because at the hearing, at the hearing before that order, so there was a hearing in 2024 before the June 2024 order came out, Defendants Council came in and their counsel objected to the pilot program that their staff had recommended to the experts. And so Judge Silver was like, what's going on? No, she found the pilot program complied with the PLRA. Yes, but she said, we all agree that the staffing plan is coming out of the injunction, right? Right. But they were saying, and so she was asking them, well, why do you think that it's okay for me to order the plan to go to all nine prisons in 86 yards, but you're sitting here objecting to me ordering a pilot at two yards at two different prisons to kick the tires and find out if these numbers work? That doesn't make sense. Okay, but I've still got the same question. Even assume she approved the whole initial plan. Yeah. The final plan is different than the initial plan in some respects, is it not? Yes, it goes up 5% based on what... It has provisions that the initial plan didn't have. In particular, it has this provision about the medical directors not being able to have, before they had up to 100 patients, now they have no patients. Correct. And there was an explanation which might meet the necessity standard, which is that these people need to be able to run the teams essentially and not spend time seeing patients themselves. So there is an explanation. But it is a big difference. Actually, the injunction said that the facility medical directors could carry caseloads if they were not doing all of these supervisory administrative tasks. What they found out... That's what I'm saying. I didn't see that. I thought you said they can have up to 100 patients. But... And so if they... I didn't see the if not. Sorry, what? I didn't see the if not. But go ahead. No... Go ahead. Anyway, the point being is that there was conditions in the injunction about the facility medical directors. When the pilot project was done, that's when they learned information and they tightened and strengthened the plan. So they changed over time. And what I understand your friend to be saying is that change, put aside the whole plan for a moment, that change is part of a plan that needs to be justified. And I guess I'm sympathetic to the extent that the final plan couldn't be found anywhere else previously. In other words, and that was the question I asked Mr. Pappas, so I'd like to ask you, are there provisions in the final plan that absolutely mirror what was required in the  Yes, there are. That's what I thought. But I want to... Well, before you tell me what you want to tell me, answer the question I want to ask. Yes, sir. What were they? Yes, there are provisions. What were they? There were provisions about the fact that advanced practice practitioners needed to be supervised. That was in there. That they needed to stop having an over-reliance on LPNs and behavioral health texts that were basically being asked to practice medicine or pretend to be... See, and my sense is to the extent that they mirror previous requirements and the judge had made the PLRA finding as to those previous requirements, I'm not sure she needed to make them again. I take it Mr. Pappas's argument is, well, maybe, but we have a whole plan here. And as to that plan, she needs to make the PLRA findings. Well, also, sir, if you go to the staffing plan, for example, at 2ER139, page 4, there is a header that says elements of the injunction that inform primary care staffing plan. And there's a page and a half of bullet points that reference back to the injunction. At 2ER149, it says elements of the injunction that inform outpatient mental health staffing plan. Again, a page... The argument here is not that they don't follow from the injunction. The argument here is that the PLRA requires something more and that as to these provisions that pop up for the first time, either in the initial plan or the final plan, you need a PLRA finding. No, sir, because the approach that the Ninth Circuit uses from Schwarzenegger, Armstrong versus Schwarzenegger on, is that you look at the relief as a whole. By getting into the weeds here and talking about, did the facility medical directors have to have a caseload of 100 or a 75? Well, I mean, the challenge here is technical and perhaps petty and maybe silly. But it is that even as a whole, there's no statement in this final staffing plan. Yes, but I think we need to really drill down, what are the defendants asking for? Because if you look at their opening briefing, you look at their reply, at one point they're getting in the weeds. This exceeds that. But then in their reply at page 28, they say, we're not asking the court to say that the staffing plan exceeds the PLRA. They keep saying they want findings, but they don't say findings of what? What do we do with the fact that Judge Silver repeatedly says, I'm complying with the PLRA by doing X. I don't know how many times she's said it, but it's in there a lot. Yes, sir. To me, it's almost, it's not necessary to have her do it again. From her perspective, she has said, I am complying with the PLRA. We'll agree or we don't agree. But she says she's complied, and in some cases in great detail. Am I missing something? You are not, sir. I think this court can be very assured that Judge Silver is acutely aware of her obligations under the PLRA. She has acknowledged that need to comply in the 2022 liability order. She said she was mindful of her responsibilities. In the 2023 injunction, she said she respects it. I would note the receiver order that we filed with our 28J letter. She quotes the 3626A1A. So she is well aware that the PLRA exists. I don't doubt anything you say. And it may be sufficient, as Judge Smith suggests. But I guess back to my practical self, you haven't suggested anything terrible will happen if we say, Judge, ADC's complaining that you didn't say the magic words. Say the magic, we'll give you 30 days, 15 days to say the magic words. And then he can come back here and argue why the way she said it wasn't sufficient. We'll be here. Hopefully, all three of us will still be here. But if not, three others will be here. He doesn't seem to have any problem with that other than our failure to tell a very experienced district judge how to do her job. So why don't we just do that? You certainly can tell her to add the 32 magic words. Or you can look at cases like Kelly, where the Ninth Circuit affirmed an order where 3626A was not cited or quoted or mentioned at all by the district court in Idaho. So there is precedent for this court swiftly affirming a district court order that does not, and can't, and quote, 3626A specifically, but in all means complies with both the policy reasons. And Kelly, as I understand, there was no change between the earlier order and the later order. It was just extended, no substitute. The district court order in Kelly did extend the deadlines, but it also did require some adjustments to staffing and to reporting. I see, thank you. But there were specific findings, there were specific staffing requirements in the original order, were there not? Yeah, and it built off of those. Right, but there's not one in the original junction here. Yes, there are. Is there, the original junction has numbers? Our original injunction, what Judge Silver did was she said, I want you guys to immediately hire a certain number of doctors, psychiatrists, and psychologists while we get the staffing plan going, because I want to make sure the staffing plan... Right, but this one has larger numbers, right? Yes, of course. Of course, yes, sir. Do you have other issues, questions by my colleague? Lori B, thank you very much. Thank you. So we have a brief rebuttal. Thank you, Your Honor. I know I have only a couple of minutes, so let me just hit a couple of points. The first is that we're not asking for the incantation of magic words, we're asking for findings. What we're asking for is findings that meaningfully explain and ensure that the relief in this staffing plan is, in fact, narrowly drawn, extends no further than necessary. But the council, Judge Silver has repeatedly said this does that. No, she has never said that with respect to the staffing plan, Your Honor. But she says it complies with the requirements of the PLRA. No, she does not. There is absolutely no indication whatsoever in the record that the district court found that this staffing plan, which adds more than 600 new employees to the tune of $100 million, is narrowly drawn, extends no further than necessary to correct the violation of federal law. Well, there is an indication in the record. There is not. And said this staffing plan is not narrowly drawn. And she rejected your argument. But, Your Honor, she did not make the final. No, that's a separate issue. You're saying there's no indication in the record that she thought this plan was narrowly drawn. And that's what I'm calling you on. You may be right that absent incantation of the magic words in the final order, that she's made an error. But don't tell me she didn't carefully consider and reject your argument that this wasn't narrowly drawn. Your Honor, we don't know because it's not in the order. That's right. You don't know because she didn't say the magic words. Because she didn't make the findings the PLRA requires. If I might just make one additional point. For example, with regard to the requirement that the medical directors can't have 100 patients anymore. She explained why. Why it wouldn't work. No, she did not, Your Honor. The experts in... Okay, and she adopted their explanations. So that's the same. Well, I don't know that she adopted it wholesale, Your Honor. But I don't think even the experts can show that there is not a direct conflict between what the injunction requires and then what the staffing plan requires. And there's no... The conflict? Where's the conflict? The conflict is that the... All the injunction did was say, go have a staffing plan. So how could there be a conflict? Well, okay. With respect to the facility medical director provision in particular, the injunction specifically says that facility medical directors in high-intensity facilities shall be assigned up to 100 patients. Injunction said that? Or the draft staffing plan? The injunction says that in Section 6.2 at 2ER236. That is a specific provision in the injunction. The final plan says we're doing away with that because now we're giving the FMDs additional supervisory responsibilities that are not in the injunction. And that has the effect of driving up the staffing numbers. But she explained why. She did not explain why, Your Honor, respectfully. I understood her to say because there's now a team approach to the medical staffing and there has to be somebody in charge of the team and that's what the FMDs are going to do. What there is no explanation... Can I make that up? Your Honor, that is not in the final staffing order, no. And what there is not an explanation of is why this extends no further than necessary to correct the violation of the constitutional right. Now, my friend on the other side... You're over your time. Let me ask my colleagues whether either has highly important questions that they want to ask before we adjourn. I do not. Thank you, Your Honor. Thank you both for your argument. We appreciate it. The case of Jensen v. Thornell is submitted and the court stands adjourned for the day. The case of Jensen v. Thornell is submitted. The court stands adjourned.
judges: BERZON, SMITH, HURWITZ